ORIGINAL

Approved: _____
MATTHEW J.C. HELLMAN
Assistant United States Attorney

Before: HONORABLE KEVIN NATHANIEL FOX
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA : **COMPLAINT**
:
- v. - : 19 Mag.
:
MICHELLE ROLL, : Violations of 18
: U.S.C. §§ 1956 and 2
:
Defendant. : COUNTY OF OFFENSE:
: BRONX

- - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

CHRISTOPHER MANZI, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration, and charges as follows:

**COUNT ONE**

**(Money Laundering Conspiracy)**

1. In or about July 2019, in the Southern District of New York and elsewhere, MICHELLE ROLL, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to engage in money laundering offenses, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (a)(1)(B).

2. It was a part and an object of the conspiracy that MICHELLE ROLL, the defendant, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of specified unlawful activity, would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, narcotics offenses in violation of Title 21, United States Code, Sections 841 and 846, knowing that the transactions were designed in whole and in part to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

3. It was further a part and an object of the conspiracy that MICHELLE ROLL, the defendant, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, narcotics offenses in violation of Title 21, United States Code, Sections 841 and 846, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Special Agent with the DEA. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my participation in this investigation, including my conversations with other law enforcement agents, as well as my review of reports and records, I have learned the following, in substance and in part:

    a. Since at least in or about 2018, law enforcement agents have been involved in an investigation of a Colombia-based drug trafficking and money laundering organization (the "DTMLO") that transports wholesale quantities of controlled substances, including, among others, powder cocaine, to the United States for sale by local narcotics distributors.. To receive payment for these narcotics shipments, the DTMLO relies on a network of money couriers (the "Couriers") who pick up proceeds from the narcotics sales, generally in the form of bulk cash, from members of the United States-based drug distribution networks. The Couriers move the narcotics proceeds through the Courier

network to funnel money to the DTMLO by means that mask the origin of the proceeds (the "Courier Scheme"). The investigation has learned that the Couriers typically operate as follows:

   i. First, the Couriers are directed by Colombian-based members of the DTMLO to meet with local or regional drug distributors (the "Dealers") to pick up the cash proceeds of the narcotics trade (the "DTMLO Money"). The cash proceeds are typically packaged inside bags or other containers that conceal their contents.

   ii. Next, the Couriers are directed by the DTMLO to meet with a particular individual (the "Drop") who will receive the DTO Money. The Couriers are instructed to leave pre-arranged quantities of the DTMLO Money with the Drop.

   iii. To maintain security, the Couriers will be advised that the Drop will have a pre-arranged passcode, cipher, or key (the "Code"), indicating that the Courier is leaving the DTMLO Money with the correct Drop. The Code frequently takes the form of a serial number on a single dollar of United States currency.

   iv. After confirming that the Drop has the correct pre-arranged Code, the Courier will leave the DTMLO Money with the Drop, and in exchange receive the Code or a portion of the Code. For example, the Courier may tear a dollar bill in two, retaining a portion of the dollar bill with a serial number. This allows the Courier to confirm that the Courier met with the Drop and provided the DTMLO Money to the Drop as directed.

   v. The Couriers often travel from outside specific regions to meet with multiple Dealers and Drops to transfer the DTMLO Money.

   b. MICHELLE ROLL, the defendant, is a Courier who transports narcotics proceeds in California and the New York City area, among other places.

   c. On or about July 12, 2019, ROLL traveled from California to Newark, New Jersey. ROLL checked in at a particular hotel in Elizabeth, New Jersey ("Hotel-1") and rented a Nissan Rogue ("Car-1").

   d. On or about July 15, 2019, I and other law enforcement agents surveilled ROLL. ROLL arrived in Car-1 to a particular location on Tremont Avenue in the Bronx, New York, where ROLL stopped and parked Car-1. After a short period of time, an

individual approached Car-1.  Law enforcement observed ROLL lower the driver's window of Car-1 and hand that individual a small bag ("Bag-1") with looped handles from which colorful tissue paper could be seen protruding, which bag had the appearance of a gift bag.  ROLL then closed the driver's window of Car-1 and returned to Hotel-1.

    e. On or about July 16, 2019, I and other law enforcement agents observed ROLL leave Hotel-1 and enter Car-1, alone.  I observed that as ROLL exited Hotel-1, ROLL had in her possession one large tote bag, which had two long handles and was open at the top.  Inside of the tote bag, I observed multiple smaller bags with looped handles from which colorful tissue paper could be seen protruding ("Bag-2," "Bag-3," Bag-4," and, together with Bag-1, the "Bags").  I observed that the Bags appeared to be similar, in that Bags-2, -3, and -4 had an identical appearance to the appearance of Bag-1.  I observed ROLL place Bags-2, -3, and -4 inside the trunk of Car-1, as depicted below:



    f. After leaving Hotel-1 with the Bags on July 16, 2019, ROLL was surveilled driving to a retail establishment, where ROLL parked Car-1 and entered that retail establishment.  After a period of time, ROLL returned to Car-1, when I and other law enforcement agents approached ROLL.  During the conversation

4

that followed, ROLL consented to a search of Car-1. Prior to the search, ROLL was asked if any of her belongings were inside Car-1, and ROLL replied, in substance and in part, that Car-1 contained gifts she was bringing to other people. During the search of Car-1, I located, among other things: (i) a rental agreement between ROLL and a rental company for Car-1; (ii) a piece of note paper bearing the name of Hotel-1 ("the Note"); and (iii) Bags-2, -3, and -4 inside the trunk of Car-1.

g. Inside of each of Bags-2, -3, and -4, I observed bundles of United States currency, totaling approximately $140,000 in $100 denominations inside the colorful tissue paper, as depicted below:



h. I observed that the Note, recovered from Car-1, bore names, each of which was followed by a series of numbers which I believe based on my training and experience to be related to the Courier Scheme. First, the names are each followed by a telephone number. Next, the telephone number is followed by a serial number, which I believe based on my training and experience to represent the Code which corresponds to the particular name. Next, the serial number is followed by a figure, which I believe based on my training and experience to represent the amount of PTQ Money the Courier is directed to leave the Drop. Additionally, on

5

the Note was an address located in New York City (the "Address"). Based on investigation and checks of law enforcement databases, I have determined that an individual resides at the Address whose first name matches one of the names on the Note.

      i. ROLL was taken into custody, at which time law enforcement observed ROLL to be in possession of four cellular telephones. With respect to the cellular telephones, ROLL stated, in substance and in part, among other things, that three of the cellular telephones were for work. Based on my training and experience, I know that individuals who engage in drug trafficking and money laundering frequently use multiple cellular telephones to coordinate their transactions and avoid law enforcement detection.

WHEREFORE, the deponent respectfully requests that MICHELLE ROLL, the defendant, be imprisoned or bailed, as the case may be.

_____
CHRISTOPHER MANZI
Special Agent
Drug Enforcement Administration

Sworn to before me this
__17__ day of July, 2019

_____
HONORABLE KEVIN NATHANIEL FOX
United States Magistrate Judge
Southern District of New York

6